**Lucille K. COLLINS, Appellant,**

v.

**Linda BURG, Respondent.**

No. 74285.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 9, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 3, 1999.

Application for Transfer Denied
Aug. 24, 1999.

Melvin L. Raymond, St. Louis, for appellant.

Peter T. Sadowski, St. Louis, for respondent.

RICHARD B. TEITELMAN, Judge.

Lucille Collins (Plaintiff) appeals from the judgment sustaining the motion of Linda Burg (Defendant) to dismiss Plaintiff's cause of action against Defendant for trespass to real property. The court granted the motion to dismiss because it found that Plaintiff had previously brought an action against Defendant involving the same nucleus of operative facts in federal district court. The court thus concluded that Plaintiff's subsequent trespass suit against Defendant was barred by the rule in Missouri that prohibits a party from splitting a single cause of action. In her sole point on appeal, Plaintiff contends the court erred and that the rule against splitting a cause of action is inapplicable because her claims against Defendant in the federal action and in the subsequent state court trespass action involved two separate and distinct causes of action. We reverse and remand.

## BACKGROUND AND PROCEDURAL HISTORY

This matter involves a rancorous dispute between two parties, each of whom contends the other exercised or attempted to exercise improper influence over Plaintiff's elderly sister during the last nine or ten months of sister's life.

In March of 1996 Plaintiff's sister, Everetta Moody, who owned her home at 8311 Braddock in University City, Missouri, became seriously ill. She was admitted to St. John's Mercy Skilled Nursing Center, after having been diagnosed with cancer. While Moody was at the Nursing Center, Plaintiff, who resided in San Francisco, California, approached Moody and presented her with some papers to sign. One of the documents was a power of attorney. Another of the documents was a deed, in which Moody conveyed her house in University City to Plaintiff. Later that year, after Moody had returned home from the Nursing Center, she signed an affidavit stating that she was incapacitated at the time she signed the deed to her house and the other documents that Plaintiff had had her sign in the Nursing Center; that she did not read those documents when she signed them; that she was unaware of the nature and contents of the documents at the time she signed them; that she had no memory of signing them; that she had not learned until just recently that one of the documents she had signed was a deed purporting to convey her house to Plaintiff; and that she had never intended to convey her house to Plaintiff or anyone else.

Sometime after Plaintiff obtained the deed to the house, Moody, though still suffering from cancer, recuperated sufficiently to be able to leave the Nursing Center and return home. At about that same time or shortly thereafter, Defendant, who knew Moody because Moody had been employed as a domestic worker in the home of Defendant's parents for a number of years when Defendant was a child, began staying with Moody at her residence in University City and acting as Moody's caretaker. Defendant continued serving as Moody's caretaker until Moody died, on December 15, 1996.

Three days following her sister's death, on December 18, 1996, Plaintiff filed a three-count lawsuit against Defendant in

the United States District Court for the Eastern District of Missouri. In her federal lawsuit, Plaintiff alleged that Defendant had either intentionally or negligently inflicted severe emotional distress upon her, by engaging in a pattern of acts that intruded into Plaintiff's private family affairs relating to Moody during the last nine or ten months of Moody's life. The suit, which sought compensatory and punitive damages of at least $200,000, claimed that Defendant had engaged in a number of extreme and outrageous acts. Among the alleged acts were: that Defendant had accompanied Moody home from the Nursing Center and "proceeded to completely take over her household and life, including staying [at the residence] for long periods of time;" that Defendant had changed the locks to the residence; that Defendant had made decisions as to the hiring and firing of housekeepers and home health care providers for Moody, and had caused such providers that had been hired by plaintiff to quit; that Defendant had interfered in decisions regarding Moody's medical treatment by countermanding Plaintiff's decisions made pursuant to a proper power of attorney; that Defendant had caused Moody's long-time physician to terminate his doctor-patient relationship with Moody; that Defendant had isolated Moody by preventing Plaintiff and other relatives from visiting privately with Moody at the residence; and that Defendant had improperly attempted to make funeral and burial arrangements for Moody.

Plaintiff's federal lawsuit also raised allegations against Defendant of fraud and undue influence. Plaintiff alleged that through the exertion of undue influence and deception Defendant had caused Moody to revoke a power of attorney previously granted by Moody to Plaintiff, and to replace it with a new power of attorney granted to Defendant. Similarly, the suit also alleged that through undue influence Defendant had caused Moody "to execute a purported will." The will was executed by Moody on August 22, 1996, after she was released from the Nursing Center, and approximately three months before

Moody executed her sworn affidavit stating that she had not been aware of the documents she had signed while in the Nursing Center and had only recently learned that one of those documents was a deed purporting to convey her house in University City to Plaintiff. The will which Plaintiff complained of provided, in part:

> **Article III**: I give and bequeath my dog, Snoopy, to [Defendant] LINDA M. BURG, and further direct that Linda M. Burg may reside in my home until such time as my home is sold.

Eventually, Plaintiff's federal lawsuit against Defendant was dismissed with prejudice. First, the claims alleging undue influence were dismissed on grounds that such estate-related claims were not a proper subject of federal court jurisdiction. Then, on February 26, 1998, the federal district court granted summary judgment in favor of Defendant on the remaining two counts, which alleged negligent or intentional infliction of emotional distress; the court did so based on its finding that Plaintiff had failed to establish that her alleged emotional distress was either medically diagnosable or medically significant.

On December 20, 1996, two days after she filed her federal lawsuit against Defendant, Plaintiff made an oral demand upon Defendant that she vacate the premises at 8311 Braddock. Plaintiff then made a written demand that Defendant vacate, on December 24, 1996. Defendant refused to vacate, however, and apparently continues to occupy the premises.

On June 4, 1997, while her federal lawsuit was still pending, Plaintiff filed the present action for trespass against Defendant in the circuit court of St. Louis County. In this action Plaintiff alleges that she is the lawful owner of the residence at 8311 Braddock, that Defendant began occupying the residence sometime prior to Moody's death on December 15, 1996, and that Defendant has continued to occupy the residence and refused to leave despite the demands to vacate the premises that Defendant made upon her on December 20

and December 24, 1996. Plaintiff's action seeks recovery of possession of the premises, actual damages resulting from the alleged trespass and for lost use of the property, and punitive damages in the amount of $50,000. The punitive damages claim alleges that although Defendant "is not related by blood or marriage to plaintiff nor plaintiff's late sister, Everetta Moody," the alleged trespass "has intruded into the lives of plaintiff and her family. Defendant's conduct has been willful, malicious, and with wanton disregard of plaintiff's rights and in violation of plaintiff's sensibilities...."

On September 19, 1997, Defendant filed her motion to dismiss the trespass action. Defendant's motion argued that the trespass action arose from the same set of operative facts involved in the previously filed federal lawsuit that Plaintiff had brought against Defendant, and that it was therefore barred by the rule in Missouri which prohibits a party from splitting a single cause of action.

On March 20, 1998, the circuit court entered a judgment granting Defendant's motion to dismiss, with prejudice. In its judgment, the court took judicial notice of the Complaint and the final Judgment in the federal lawsuit. Comparing the trespass action to the earlier federal suit, the court found that "the parties are identical and the claims, though distinct, arise out of the same facts." The court thus concluded that by bringing the subsequent trespass suit Plaintiff had in fact improperly split a cause of action. This appeal followed. The issue is whether Plaintiff's second suit amounted to splitting a single cause of action.

## DISCUSSION

■ A cause of action which is single may not be split by a plaintiff and filed or tried piecemeal. *Eugene Alper Construction Co., Inc. v. Joe Garavelli's of West Port, Inc.*, 655 S.W.2d 132, 135 (Mo.App. E.D.1983). The penalty for violating this rule is that an adjudication on the first suit is a bar to the second suit. *Id.; Burke v. Doerflinger*, 663 S.W.2d 405, 407 (Mo.App. E.D.1983). Though not one and the same, the rule against splitting a cause of action is closely related to the doctrine of res judicata; both are designed to prevent a multiplicity of lawsuits. *Burke* at 407.

■ The question of what constitutes a "single cause of action," for purposes of the rule against splitting a cause of action, is sometimes fraught with difficulty.[1] 1A C.J.S. *Actions*, section 179(b) (1985); *Grue v. Hensley*, 357 Mo. 592, 210 S.W.2d 7, 10 (Mo.1948). As a result, there is no hard and fast rule for the determination of that question; rather, it depends on the facts and circumstances of the particular case. *Szombathy v. Merz*, 347 Mo. 776, 148 S.W.2d 1028, 1031 (Mo.1941); *Stoops v. Stoops*, 363 Mo. 1075, 256 S.W.2d 799, 801 (Mo.1953); *Eugene Alper*, 655 S.W.2d at 135. In general, however, the test for determining whether a cause of action is single and cannot be split is: (1) whether the separate actions brought arise out of the same act, contract or transaction; (2) or whether the parties, subject matter and evidence necessary to sustain the claim are the same in both actions. *Burke v. Doerflinger*, 663 S.W.2d at 407; *Stoops v. Stoops*, 256 S.W.2d at 801; *Grue v. Hensley*, 210 S.W.2d at 10. In this regard, the term "cause of action" is given a fairly broad meaning. *Grue* at 10. And the word "transaction" is given an even broader meaning, being defined as the aggregate of all the facts and circumstances which constitute the foundation for a claim or counterclaim. *Id.* A classic illustration of the rule against splitting a cause of action is Missouri's adherence to the principle, followed as well by a majority of other states[2], that a single wrongful or negligent act which causes injury to both

---

1. Our state's Rules of Civil Procedure do not address this matter; in Missouri, the prohibition against splitting a cause of action is purely a common law rule. *Long v. Walters*, 833 S.W.2d 38, 39 (Mo.App. E.D.1992).

2. See generally, Annotation, *Simultaneous Injury to Person and Property as Giving Rise to Single Cause of Action—Modern Cases*, 24 A.L.R.4th 646 (1983).

the person and property of the same individual constitutes only one cause of action but with separate items of damages. *Chamberlain v. Missouri—Arkansas Coach Lines, Inc.*, 354 Mo. 461, 189 S.W.2d 538, 539–40 (Mo.1945). Hence, such a cause of action cannot be split; and a judgment in an action for recovery for one item of damage will bar a separate action to recover for the other item. *Id.; Lee v. Guettler*, 391 S.W.2d 311, 313 (Mo.1965).

■ At the same time, however, Missouri case law in this area leaves no doubt that separate and distinct causes of action can sometimes arise from the same act, transaction or contract. In such instances a plaintiff may bring separate causes of action separately, even if they arise out of the same transaction, and doing so does not violate the rule against splitting a cause of action. *Nolan v. Kolar*, 629 S.W.2d 661, 664(Mo.App. E.D.1982); *Miller v. SSI Global Sec. Service*, 892 S.W.2d 732, 734 (Mo.App. E.D.1994). This is true even where joinder of the two separate causes in one lawsuit would be permissible, subject of course to the power of the court to order consolidation. *Lee v. Guettler*, 391 S.W.2d at 313. For the same reason, it is equally clear that a later lawsuit does not necessarily and always violate the rule against splitting a single cause of action even when it meets the first prong of the *Grue v. Hensley* test, if at the same time it fails to meet the second prong of the *Grue v. Hensley* test (that the parties, subject matter and evidence necessary to sustain the claim are the same in both actions). See *State ex rel. Todd v. Romines*, 806 S.W.2d 690, 692 (Mo.App. E.D.1991)(wrongful death action and constructive trust action both arise from the same act of homicide, but parties, basic subject matter, and evidence necessary to prevail on both claims are different); and

*Miller v. SSI Global Sec. Service*, 892 S.W.2d at 734 (action of customer against security company and supermarket for injuries sustained when assaulted on supermarket's parking lot both grew out of same underlying transaction, but the parties, subject matter and petition allegations in the two cases are different).

■ Applying these principles to the case at bar, we find that Plaintiff's trespass action against Defendant, when measured against her previous federal suit brought against Defendant alleging intentional and/or negligent infliction of emotional distress, does not violate the rule against splitting a single cause of action. This is so for two reasons.

First, the trespass action fails to meet the first part of the test set forth in *Grue v. Hensley* because it does not arise out of the same transaction or set of operative facts as the earlier federal lawsuit. The gravamen of the first lawsuit was a claim that Defendant had engaged in a pattern of actions whereby she wrongfully intruded into the personal and family affairs of Plaintiff with respect to the living arrangements, medical treatment, care and support of Plaintiff's 86–year–old sister (Moody), thereby causing Plaintiff emotional distress. Significantly, in the federal lawsuit Plaintiff did not raise any claim of trespass against Defendant. The Complaint in that lawsuit did not specifically raise any allegations of trespass by Defendant with respect to the residence at 8311 Braddock; nor did the suit seek recovery of possession of the residence. Rather, Plaintiff claimed only that Defendant had engaged in various specific acts, acts which were alleged to be intrusive and outrageous relative to Plaintiff's relationship with her sister and for which compensation and punitive damages were sought.[3] The

---

**3.** Defendant/Respondent argues that the federal lawsuit did, at least implicitly, allege acts of trespass. We disagree. Defendant is correct in noting that Plaintiff asserted in that suit that she was the owner of the residence at 8311 Braddock. It is also true that a few of the "outrageous" acts Defendant was alleged to have committed (such as changing

the locks at the residence, and staying there "for long periods of time, sometimes overnight") were somewhat possessory in nature and presumably done without Plaintiff's permission (why else would she complain about them?). Still, such acts do not necessarily constitute trespass; and nothing in the federal

gravamen of the later trespass action is fundamentally different. In that action, Plaintiff simply alleges that she gave oral and then written notice to Defendant in late December of 1996 to quit occupancy of the premises at 8311 Braddock, and that Defendant has failed to do so. The alleged notice occurred after Moody's death, and *after* the federal lawsuit had already been filed. Yet it was not until after such notice had been given, along with the clear-cut termination of any consent by Plaintiff to Defendant's occupancy that such notice signified, that Defendant could be deemed a trespasser and Plaintiff would have the right to the relief sought (recovery of possession) in her trespass action. *Wright v. Edison,* 619 S.W.2d 797, 803 (Mo.App. E.D.1981).

Thus, it is clear that the trespass action is based upon alleged facts which are fundamentally different from, and independent of, the alleged facts supporting the claim for intentional and negligent infliction of emotional distress raised by Plaintiff in her first lawsuit. The reverse is also true; the two actions simply do not arise out of the same transaction or set of operative facts.[4] Since the trespass action did not arise from the same facts as the prior litigation, but rather arose from different acts and circumstances, it is a separate and distinct cause of action which may be sued on separately. *Eugene Alper,* 655 S.W.2d at 135–36; *Long v. Walters,* 833 S.W.2d 38, 39 (Mo.App. E.D.1992).

Second, even assuming *arguendo* that in some very broad general sense the trespass action perhaps can be said to have arisen from the same "transaction" or constellation of background facts as the first lawsuit, it nonetheless still would be true that the trespass claim is, unquestionably, a *separate and distinct* cause of action from the one alleging infliction of emotional distress. It is separate and distinct, and fails to meet the second part of the *Grue v. Hensley* test, because the basic subject matter of the two suits is altogether different and so is the evidence necessary to sustain their respective claims for relief. *Miller v. SSI Global Sec. Service,* 892 S.W.2d at 734. A claimant is permitted to bring separate suits on separate and distinct causes of action even if they arise out of the same underlying transaction or set of facts. *Id.; Lee v. Guettler,* 391 S.W.2d at 313; *Nolan v. Kolar,* 629 S.W.2d at 664.

Plaintiff did not impermissibly split a single cause of action by bringing her trespass suit against Defendant. The court erred in entering judgment sustaining Defendant's motion to dismiss on that basis. Accordingly, the judgment is reversed and the cause is remanded to the trial court to reinstate Plaintiff's petition.[5]

Presiding Judge JAMES R. DOWD and Judge LAWRENCE G. CRAHAN, concur.

Complaint ever specifically alleged trespass. Moreover, a careful reading of the Complaint is consistent with the view that it implicitly acknowledges that Plaintiff (even despite her antipathy toward Defendant) acquiesced in Defendant's occupancy of the premises in the months leading up to Moody's death, since it alleges that she did not ask or demand that Moody leave the premises until December 20, 1996.

4. The mere fact that there may be some limited or tangential overlappage regarding the background facts in the two cases does not mean that there has been an impermissible splitting of a single cause of action. Our Supreme Court has expressly recognized that two causes of action can sometimes "overlap or possess certain elements in common but

still differ in essential facts or parties," and that when this happens they are considered *separate* causes of action, not a single cause of action that has been improperly split. *Grue v. Hensley,* 357 Mo. 592, 210 S.W.2d 7, 11 (Mo. 1948).

5. The fact that Plaintiff has a purported deed to the subject real estate would not necessarily be determinative of the ultimate outcome of this dispute upon remand, given Defendant's claims concerning the manner in which Plaintiff allegedly obtained the deed. Plaintiff's deed may or may not be valid. The question of its validity remains to be litigated and determined by a trial court if it has not already been. Our decision in this appeal makes no determination whatsoever, either express or implied, regarding that question.